UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIUS McBRIDE,

     Petitioner,                         Case No. 07-CV-11156

v.                                    HON. AVERN COHN

JEFFREY WOODS,

     Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

    This is a habeas case under 28 U.S.C. § 2254.  Petitioner Demetrius Darnell McBride (Petitioner) is a state inmate at the Kinross Correctional Facility in Kincheloe, Michigan.  Petitioner is serving a sentence of twenty three years, nine months to fifty years for armed robbery, M.C.L. § 750.529; two to five years for felon in possession of a firearm, M.C.L. § 750.224f; and a consecutive ten year sentence for possession of a firearm during the commission of a felony, third or subsequent offense, M.C.L. § 750.227b.  Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims are procedurally defaulted or without merit.  For the reasons which follow, the petition will be denied.  The Court also declines to issue a certificate of appealability.

## II. Procedural History

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court, where he was tried jointly with his co-defendant Virgil Ray Green.

Petitioner filed an appeal of right, presenting two claims for relief. Petitioner also filed a *pro per* supplemental brief on appeal, in which he raised six additional claims. Three of the eight claims raised on appeal are raised in the petition. The Michigan Court of Appeals affirmed petitioner's conviction. *People v. McBride,* No. 252505 (Mich.Ct. App. August 16, 2005). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. McBride* 474 Mich. 982 (2005).

On March 16, 2007, petitioner filed his application for habeas relief with this Court. Shortly thereafter, the Court issued an order granting petitioner's motion to hold the petition in abeyance to permit him to return to the state courts to exhaust additional claims. *See McBride v. Lafler,* No. 2007 WL 1218771 (E.D. Mich. April 24, 2007).

Petitioner subsequently filed a post-conviction motion for relief from judgment with the state trial court under M.C.R. 6.500, *et. seq.,* in which he raised what now make up his fourth, fifth, and sixth claims. The trial court denied the motion. *People v. McBride,* No. 03-005631-01 (Third Judicial Circuit Court, January 15, 2008). The Michigan appellate courts denied leave to appeal. *People v. McBride,* No. 289776 (Mich.Ct.App. June 17, 2009); *lv. den.* 778 N.W.2d 232 (2010).

On August 12, 2010, the Court lifted the stay of proceedings, amended the caption, and reinstated the petition to the Court's active docket. *McBride v. Woods*, No.

2

2010 WL 3198891 (E.D. Mich. August 12, 2010).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I.  The trial court abused his discretion by admitting evidence that binoculars, a pair of leather gloves, a knit cap, a ski mask and a flashlight were found in petitioner's car during an inventory search following petitioner's arrest for armed robbery, thereby denying him his state and federal constitutional rights to a fair trial.

II.  Petitioner was convicted on the basis of irrelevant and inadmissible evidence of items found in his car in violation of his right to due process, and his trial attorney's failure to move to suppress the identifications denied him the right to effective assistance of counsel. U.S. Const Am. XIV, Mich. Const. Art. 1., Sec. 17.

III.  Petitioner's constitutional rights were violated when the prosecution questioned petitioner if his religious belief was that of the Islamic faith, clearly depriving him of a fair trial by deliberately examining his belief in a God.

IV.  Prosecutorial misconduct deprived petitioner of his Sixth and Fourteenth Amendment rights to a fair and impartial trial where the prosecution invaded the province of the jury by improperly eliciting opinion testimony from the lay witness/victim that petitioner was the person depicted in the surveillance video, where the prosecution misled the jury by misstating the evidence and arguing facts not in evidence, by shifting the burden of proof, and by improperly commenting on petitioner's economic status implying his propensity to commit the charged offense.

V.  Petitioner was deprived of his Sixth Amendment constitutional right to the effective assistance of trial counsel where counsel failed to request a *Wade* hearing based on suggestive pre-trial encounters, failed to object to several instances of prosecutorial misconduct, failed to investigate and introduce petitioner's medical records which would have shown that he was physically incapable of committing the acts alleged in the instant offense, failed to call a medical expert, failed to prepare for trial and properly present petitioner's defense, failed to properly question petitioner on direct exam so that he could adequately respond to the prosecution's case, and failed to object to the introduction of the selected still photographs admitted into evidence pursuant to the "best evidence rule" and the "rule of completeness."  The cumulative effect of counsel's professional errors deprived petitioner of his Sixth and Fourteenth Amendment rights to a fair and impartial trial.

3

VI.  Petitioner was deprived of his Sixth Amendment right to the effective assistance of appellate counsel where counsel failed to raise several meritorious issues upon request which would have established beyond a reasonable doubt that petitioner could not have committed the crime and is actually innocent of the charged offense.

### III.  Facts

The material facts from petitioner's conviction have been gleaned from the record as follows.

David Moore was working at a self-serve car wash on Van Born Road in Dearborn Heights, Michigan on the morning of April 24, 2003.  Moore noticed a blue Mazda, driven by the co-defendant, Virgil Green, parked by the vacuum cleaners facing the CVS Pharmacy.  About fifteen minutes later, Moore noticed a second man wearing a blue jacket walk across Van Born Road and enter the passenger side of the car. Moore identified petitioner as this individual.  Green and petitioner remained for a brief period of time at the car wash before driving off.  Moore subsequently heard police sirens in the area of the pharmacy and spoke with police officer and gave him a brief description of the men. (Tr. 9/23/2003, pp. 189-227; Tr. 9/24/2003, pp. 5-24).

Ryan West was employed at the CVS pharmacy in Dearborn Heights and was working there on the morning of April 24, 2003.  Green approached West and asked him for assistance in locating a product.  After assisting Green with finding the item, Patricia Root, the pharmacy supervisor, approached West and informed him that she observed a person enter the pharmacy's office with the pharmacist and the assistant manager and told West that she believed that the store was being robbed.  Root called the police.  Green purchased a product from the store, before walking back through the

4

store and stating "Come on. Let's go."  West observed a second man, who was wearing

a hood, come from the rear of the pharmacy carrying a pouch.  West identified petitioner

as this second man.  Green exited the front door.  The police were outside.  West

testified that petitioner asked "Who called the police?", before pulling out a handgun and

pointing it at West and Root.  Petitioner took West and Root to the rear of the pharmacy

and was let out of the back exit by Root. (Tr. 9/24/2003, pp. 25-100).

William Garrison was the assistant manager at the CVS Pharmacy.  Garrison

was at the front register when Green and petitioner entered the store.  Garrison was

paged to the pharmacy and went to the rear of the store.  Green asked for directions to

the beverages.  Garrison assisted Green and then went to the pharmacy area.  Garrison

testified that a man entered the pharmacy area wearing a hood and having  his lower

face covered by a scarf.  Garrison identified petitioner as this man.  Petitioner pointed a

handgun at Garrison and the pharmacist and stated "You know the drill".  Petitioner

ordered them into the office, told the pharmacist to kneel on the floor, and directed

Garrison to open the safe.  Petitioner and the pharmacist placed over $5,000.00 into a

canvas bag.  Petitioner grabbed the bag and placed it on his person.  Garrison noticed

petitioner hold something by his chest, into which he spoke the words "Talk to me. Talk

to me."  After petitioner left the pharmacy area, Garrison called 911. (Tr. 9/24/2003, pp.

101-55;158-63).

Patricia Root testified that on the day of the incident, she noticed two men waiting

outside of the pharmacy when she arrived at work that morning.  One of the men, whom

she identified as petitioner, followed the pharmacist and assistant manager into the

office.  Root noticed the other man, identified as Green, remain by the cash register

5

asking questions about various products.  Root called over the intercom to see if there were any problems.  Concerned by the nature of the response, Root called the police. Upon exiting the store, Root observed a police officer arrive.  When Root went back inside of the store, Green exited.  Petitioner ordered Root to the back of the store at gunpoint, where she unlocked the back door and he exited. (Tr. 9/24/2003, pp. 164-231).

Rana Khazaal is a pharmacist who works for CVS.  On the day in question, Khazaal noticed two men, whom she identified as petitioner and Green, talking to each other in a store aisle.  Khazaal was concerned because the men were heavily dressed on what was a warm day.  Khazaal notified Garrison.  Khazaal testified that petitioner followed Garrison into the pharmacy area and produced a gun.  He pointed the gun at Garrison and Khazaal and demanded the money from the pharmacy office.  Khazaal was ordered to sit on the floor while Garrison opened the safe.  Khazaal subsequently placed the money in a canvas bag, before petitioner left.  Khazaal testified that during that time, petitioner used a two-way radio to communicate with someone else. (Tr. 9/25/2003, pp. 5-69).

Chester Mason was the building manager of a VFW post that was next to the CVS pharmacy.  On April 24, 2003, Mason was remodeling the bathrooms at the post. When Mason went outside to obtain a tool from his truck, he witnessed a black male wearing a blue jean jacket and a camel colored hood walking quickly past him.  The man had his hand in his waistband.  Mason initially thought that the man had stolen something from his truck and began chasing him.  The man turned, reached into his waistline and removed a silver gun, which he pointed at Mason.  Mason hid behind a

6

building and hailed a nearby police officer.  Mason subsequently observed the police arrest a person of a similar build wearing a t-shirt.  Mason also heard that the police were looking for a firearm.  Mason searched the roof of the VFW building and located a silver handgun which was similar to the one he had seen the man point at him earlier.  Mason called to the police, who obtained the weapon from the roof. (Tr. 9/25/2003, pp. 70-116).

Dearborn Heights Police Officer Timothy Zawacki testified that he was dispatched to the CVS pharmacy.  When Officer Zawacki arrived, he drew his gun, took cover behind his car, and told Patricia Root to leave the area.  Zawecki observed Green exiting the pharmacy carrying a two-way radio.  Green was arrested by another officer.  Root returned to the area and informed Officer Zawacki that another person was escaping from the rear of the pharmacy.  Officer Zawacki ran to the back of the pharmacy, where he observed a black male wearing a blue jacket and brown pants running through the alley.  Officer Zawacki received additional information from a man at the nearby VFW post.  As Officer Zawacki went around the building, he observed the same black male that he had seen leave the rear of the pharmacy face him with a large silver object that appeared to be a firearm.  Officer Zawacki identified petitioner as this man.  Officer Zawacki took cover behind a building.  Petitioner ran into the street.  Other police officers arrived and searched the area, where they located petitioner laying under the trailer of a boat in a nearby backyard.  On the ground near petitioner was a bag which contained a bandana and $365.00 cash. (Tr. 9/25/2003, pp. 117-83).

Dearborn Heights Police Officer Michael Barr responded to the scene and began searching the neighborhood near the CVS.  In the back yard of a nearby house, he

7

assisted in the arrest of petitioner, who had been hiding under a boat.  Petitioner was

dressed in blue jeans and a white t-shirt.  Nearby, Officer Barr located a bullet resistant

vest, a blue jacket, a blue t-shirt, a brown sweatshirt, a brown pair of pants, a black knit

cap, a pair of glasses, a Cobra radio set to channel fifteen, a pair of handcuffs, a cellular

telephone, $5.26 in the pants pocket, and a canvas bag which contained $5,517.87. (Tr.

9/25/2003, pp. 221-240).

Dearborn Heights Police Officer Jeffrey Ross also testified to arresting petitioner,

after he was located hiding under a boat.  Officer Ross later recovered a  forty five

caliber semi-automatic handgun from the roof of the VFW post. (Tr. 9/25/2003, pp.

241-57).

Defense counsel stipulated that on April 24, 2003, petitioner had previously been

convicted of a felony and was ineligible to legally possess a firearm. (Tr. 9/29/2003, pp.

4-5).

Dearborn Heights Police Officer Lee Lafave towed away the blue Mazda, which

was registered to petitioner.  Officer Lafave conducted an inventory of the contents of

the vehicle, where he located a pair of binoculars, a pair of leather gloves, a knit cap, a

ski mask and a flashlight.  Over counsel's objection, the items were admitted in

evidence. (*Id.,* pp. 10-21).

Petitioner testified that on the morning of April 24, 2003, he was driving alone in

his car on Van Born Road, when he noticed some police officers at the CVS Pharmacy.

As he neared Janet Street, a black male with a big bag ran across the street, almost

colliding with petitioner, before entering a yard.  Petitioner became curious as to what

was going on and parked his car.  After seeing the man exit the yard and run, petitioner

8

entered to look for the bag that the man had left behind.  While petitioner was in this

yard, a police officer approached and arrested him.  Petitioner denied robbing the CVS

Pharmacy and denied being the person in the store surveillance video, noting that the

person in the store had a full beard, while petitioner's mug shot revealed only a

moustache and goatee.  Petitioner claimed that he did not know Green and that he

did not drive with Green to the pharmacy on that day.  Petitioner claimed that the

$365.00 that was found near him was money he had collected to be used to pay tickets.

He denied owning the bandana. (*Id.* pp. 54-61,69-89).

### IV.  Analysis

### A.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the Supreme
> > Court of the United States; or
> > (2)     resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

9

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

10

"[I]f this standard is difficult to meet, that is because it was meant to be."
*Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the
AEDPA, does not completely bar federal courts from relitigating claims that have
previously been rejected in the state courts, it preserves the authority for a federal
court to grant habeas relief only "in cases where there is no possibility fairminded
jurists could disagree that the state court's decision conflicts with" the  Supreme
Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus
is a 'guard against extreme malfunctions in the state criminal justice systems,' not a
substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,*
443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a
"readiness to attribute error [to a state court] is inconsistent with the presumption that
state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to
obtain habeas relief in federal court, a state prisoner is required to show that the state
court's rejection of his claim "was so lacking in justification that there was an error well
understood and comprehended in existing law beyond any possibility for fairminded
disagreement." *Harrington,* 131 S. Ct. at 786-87.

### B.  Procedural Default

Respondent contends that petitioner's first, third, fourth, fifth, and sixth claims
are procedurally defaulted for various reasons.  Each claim will be addressed in turn.

### 1.  Procedural Default in General

Federal habeas relief may be precluded on claims that a petitioner has not

presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  Procedural default precluding a state prisoner from seeking federal habeas relief may occur if the state prisoner files an untimely appeal, if he fails to present an issue to the state appellate court at his only opportunity to do so, or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review. *See Matson v. Michigan Parole Bd.,* 175 F. Supp. 2d 925, 927 (E.D. Mich. 2001)(internal citations omitted).  A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In *Murray v. Carrier*, 477 U.S. 478, 488 (1986), the Supreme Court defined cause sufficient to excuse procedural default as "some objective factor external to the defense," which precludes a habeas petitioner's ability to pursue his claim in state court.

## 2.  Claims One and Three

Respondent first contends that petitioner's first and third claims are procedurally defaulted because he failed to object to these errors at trial and the Michigan Court of Appeals relied on this failure to object to reject petitioner's first and third claims on his appeal of right.  The Court disagrees.

With respect to petitioner's first claim, although the Michigan Court of Appeals indicated that evidence involving the contents of petitioner's car had already been

placed before the jury without objection, the Michigan Court of Appeals did not clearly indicate that the claim was procedurally barred and instead rejected the claim on the ground that "[I]t cannot be said that it is more probable than not that the admission of the items themselves was outcome determinative." *McBride,* No. 252505, Slip. Op. at * 5.

With respect to petitioner's third claim, the Michigan Court of Appeals mentioned that "[U]npreserved constitutional error is subject to the plain error rule." However, the Michigan Court of Appeals did not explicitly find that petitioner had failed to object to the prosecutor's comments nor did they specifically rely on this failure to object as their basis of rejecting the prosecutorial misconduct claim. *Id.* at * 6.

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). The Sixth Circuit has observed that "there must be unambiguous state-court reliance on a procedural default for it to block" a federal court from reviewing a state court decision. *Bowling v. Parker*, 344 F. 3d 487, 498 (6th Cir. 2003)(citing *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000)). In light of the fact that the Michigan Court of Appeals did not unambiguously rely on petitioner's failure to object as a basis to reject these claims, petitioner's first and third claims are not procedurally defaulted.

### 3. Post-Conviction Claims - Claims Four through Six

Respondent contends that petitioner's fourth through sixth claims are

13

procedurally defaulted because petitioner raised these claims for the first time in his

post-conviction motion, and cannot show cause and prejudice for failing to raise these

claims in his appeal of right, as required by M.C.R. 6.508(D)(3).  The Court agrees.

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a

defendant if the motion for relief from judgment alleges grounds for relief which could

have been raised on direct appeal, absent a showing of good cause for the failure to

raise such grounds previously and actual prejudice resulting therefrom.  For purposes

of a conviction following a trial, "actual prejudice" means that "but for the alleged error,

the defendant would have had a reasonably likely chance of acquittal." M.C.R.

6.508(D)(3)(b)(i).

The Michigan Court of Appeals and the Michigan Supreme Court rejected

petitioner's post-conviction appeal on the ground that "the defendant has failed to meet

the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders,

however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to

raise these claims on his direct appeal as their rationale for rejecting his post-conviction

claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to

whether they refer to procedural default or a denial of post-conviction relief on the

merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th

Cir. 2010).  This court must "therefore look to the last reasoned state court opinion to

determine the basis for the state court's rejection" of petitioner's claims.  *Id.*

Here, the trial court, after discussing the provisions of M.C.R. 6.508(D),

including subsection (3),rejected the motion for relief from judgment, ruling that

petitioner had failed to demonstrate good cause for failing to raise his claims in his prior

14

motions or on appeal and had also failed to demonstrate that he had suffered actual prejudice from any of the "alleged irregularities." *See People v. Mcbride,* No. 03-005631-01, Slip. Op. at * 1-2.  Because the trial court denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005).  Petitioner's fourth and fifth claims are therefore procedurally defaulted. [1]

Petitioner, however, claims ineffective assistance of appellate counsel as cause to excuse his procedural default.   It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

> *Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for

---

[1] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F. 3d at 291; *Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004).  However, for the reasons stated *infra*, petitioner is not entitled to habeas relief on this claim.

the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington*] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his fourth and fifth claims. Appellate counsel filed a twelve page brief which presented what now make up the first two claims in the petition. Petitioner has not shown that appellate counsel's

16

strategy in presenting these claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by Respondent in its anwer to the petition, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners."  Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872.

Finally, in addition to the appellate brief filed by appellate counsel, petitioner filed a thirty four page supplemental Standard 11 *pro per* brief on his appeal of right before the Michigan Court of Appeals. [2]  Although petitioner raised six claims in this supplemental appeal brief, he did not present any of the issues that he would subsequently raise for the first time on his post-conviction motion for relief from judgment.  Petitioner took advantage of the opportunity under the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include what make up his fourth and fifth claims in his supplemental brief.  Petitioner has not explained why he failed to raise his fourth and fifth claims in his supplemental *pro per* brief that he filed as part of his direct appeal.  Because petitioner has offered no reasons for his failure to include these

---

[2] At the time of petitioner's appeal of right, a criminal defendant was permitted to file a supplemental *pro per* brief on appeal in addition to any appeal brief that may have been filed by appellate counsel. See Standard 11 of Administrative Order 1981-7; 412 Mich. lxv, lxxxix (1981), reaffirmed by A.O.1985-3, 421 Mich. lxvii (1985).  The Michigan Supreme Court has since superceded Standard 11 with Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004).

claims in his supplemental *pro per* brief on his direct appeal, he has failed to establish

cause to excuse the default of these claims.

Because petitioner has not demonstrated any cause for his procedural default, it

is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at

533.  Additionally, petitioner has not established that a fundamental miscarriage of

justice has occurred.  The miscarriage of justice exception requires a showing that a

constitutional violation probably resulted in the conviction of one who is actually

innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means

factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S.

614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to

support his allegations of constitutional error with new reliable evidence -- whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.  Because

petitioner has not presented any new reliable evidence that he is innocent of this crime,

a miscarriage of justice will not occur if the Court declined to review his procedurally

defaulted claims on the merits.

Finally, even if petitioner had established cause for his default, he would be

unable to satisfy the prejudice prong of the exception to the procedural default rule,

because his claims would not entitle him to relief.  The cause and prejudice exception

is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486

F. 3d 883, 891 (6th Cir. 2007).   For the reasons stated by Respondent in its answer,

petitioner has failed to show that his claims have any merit.

### 4.  Conclusion Regarding Procedural Default

Overall, petitioner's first and third claims are not procedurally defaulted and will be addressed below.  Petitioner's fourth, fifth and sixth claims are procedurally defaulted and petitioner has failed to overcome his default.

### C.  First Claim - Evidentiary Error

In his first claim, petitioner argues that the trial court abused its discretion by admitting into evidence binoculars, a pair of leather gloves, a ski mask, and a flashlight that were found in petitioner's car during an inventory search following his arrest. Petitioner claims that the evidence was irrelevant and was improper character evidence which tended to portray petitioner as a "serial robber."

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Spalla v. Foltz,* 615 F. Supp. 224, 234 (E.D. Mich. 1985).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v.*

19

*Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

To the extent that petitioner argues that the state court violated M.R.E. 404(b) by admitting improper character evidence against him, he would not be entitled to relief because this claim is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F.3d 514, 519 (6ᵗʰ Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6ᵗʰ Cir. 2003). Petitioner is therefore not entitled to habeas relief on his first claim.

### D.  Second Claim - Ineffective Assistance of Trial Counsel

Petitioner next contends that he was deprived of the effective assistance of trial counsel. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words,

petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Under the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).  Finally, this Court is aware that "[R]eliance

21

on 'the harsh light of hindsight' to cast doubt on a trial that took place" eight years ago

"is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S.

Ct. at 789.

Petitioner first appears to argue that trial counsel was ineffective for failing to

object to the admission of the binoculars, a pair of leather gloves, a ski mask, and a

flashlight that were taken out of petitioner's car.  Counsel, in fact, objected to the

admission of these items on relevancy grounds. (Tr. 9/29/2003, p. 17).  Because

counsel did, in fact, object to the admission of this evidence, this ineffective assistance

of trial counsel claim is without merit. *See e.g. Durr v. Mitchell,* 487 F.3d 423, 440 (6th

Cir. 2007).

Petitioner next contends that trial counsel was ineffective for failing to file a pre-

trial motion to suppress the identifications made of him by four of the prosecution

witnesses.  Petitioner contends that the identifications of him made by William

Garrison, David Moore, and Ryan West were unduly suggestive because petitioner

was placed on display in the courtroom during the preliminary examination.  Petitioner

further claims that Ryan West was able to view petitioner at his preliminary parole

violation hearing.  Petitioner further claims that witness Patricia Root was shown a

mugshot of petitioner at the CVS Pharmacy, which amounted to a one man showup.

Petitioner claims that counsel was ineffective because instead of filing a pre-trial motion

to challenge the reliability of the witness identifications, counsel relied on cross-

examination of the witnesses to challenge the reliability of their identifications.

A review of the trial transcripts shows that trial counsel extensively cross-

examined all of the witnesses about the circumstances surrounding their identifications

22

of petitioner and the potential problems with their identifications. (Tr. 9/23/2003, pp. 226-27; Tr/ 9/24/2003, pp. 5-7; 77-87; 141-42, 145, 151-55; 192-95; 200-01; 205-11; Tr. 9/25/2003, pp. 41-49, 62; 111-12; 155-69).

The decision to attack the credibility of the witnesses' identification of petitioner through cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy that defeats petitioner's ineffective assistance of counsel claim. *See Millender v. Adams,* 187 F. Supp. 2d 852, 868 (E.D. Mich. 2002); *Monroe v. Stegall,* 197 F. Supp. 2d 753, 760 (E.D. Mich. 2001)(both citing to *Killebrew v. Endicott*, 992 F. 2d 660, 665 (7th Cir. 1993)).

Moreover, petitioner challenges the reliability of the identifications made of him by David Moore, Ryan West, William Garrison, and Patricia Root. Petitioner, however, was also positively identified by Rana Khazaal and Officer Zawacki as being one of the perpetrators. Petitioner was also found by police moments after the robbery hiding under a boat near a bag which contained a bandana and $365.00 cash. In the nearby area, police recovered a bullet resistant vest, a blue jacket, a blue t-shirt, a brown sweatshirt, a brown pair of pants, a black knit cap, a pair of glasses, a Cobra radio set to channel fifteen, a pair of handcuffs, a cellular telephone, $5.26 in the pants pocket and a canvas bag containing $5,517.87. Because of the additional evidence against petitioner in this case, counsel was not ineffective in failing to bring a pre-trial challenge to the reliability of the identification of petitioner by Moore, Garrison, West, and Root. *See Riley v. Jones,* 476 F. Supp. 2d 696, 710 (E.D. Mich. 2007).

### E.  Third Claim - Prosecutorial Misconduct

23

In his third claim, petitioner contends that he was deprived of a fair trial when the prosecutor improperly questioned him about his Islamic faith.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Byrd v. Collins*, 209 F. 3d 486, 529 (6th Cir. 2000) (*quoting Darden v. Wainwright*, 477 U.S. 168, 181 (1986))(*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Therefore, even if the prosecutor's conduct was 'undesirable or even universally condemned,' *Darden*, 477 U.S. at 181 (quotation marks and citations omitted), it does not constitute a due process violation unless the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Byrd*, 209 F. 3d at 529 (end citations omitted).  In addition, because this case is a habeas case and is not a direct appeal, the inquiry into an issue of prosecutorial misconduct is less stringent. *See Spalla*, 615 F. Supp. at 227.  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)(*quoting Donnelly*, 416 U.S. at 645).  In deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *See Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997).

Here, the Court agrees with the Michigan Court of Appeals that the prosecutor's

24

questions to petitioner about his Islamic faith were irrelevant, improper, and offensive. *See McBride,* No. 252505, * 6.  However, in light of the substantial evidence against petitioner, detailed above, the prosecutor's two brief references to petitioner's religion did not have a substantial and injurious effect or influence in determining the jury's verdict.  Therefore, petitioner is not entitled to habeas relief on this ground. *See McCary v. Lewis,* 255 Fed.Appx. 78, 79-80 (6th Cir. 2007).

## V.  Conclusion

For the reasons stated above, the state courts' rejection of petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). [3] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**SO ORDERED.**

Dated:  October 26, 2011                  s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE

---

[3] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

**07-11156 McBride v. Woods**
**Memorandum & Order Denying Petition**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to Demetrius
McBride, 192629, Kinross Correctional Facility, 16770 S. Watertower Drive,
Kincheloe, MI 49788 and the attorneys of record on this date, October 26, 2011, by
electronic and/or ordinary mail.

  s/Julie Owens
Case Manager, (313) 234-5160